(No. 45004.—

THE PEOPLE OF THE STATE OF ILLINOIS, Appellee, v. WILLIE E. GRANT, Appellant.

*Opinion filed May 29, 1974.*

Edward M. Genson and James J. Cutrone, both of Chicago, for appellant.

William J. Scott, Attorney General, of Springfield, and Bernard Carey, State's Attorney, of Chicago (James B.

Zagel, Assistant Attorney General, and Patrick T. Driscoll, Jr., and Scott W. Petersen, Assistant State's Attorneys, of counsel), for the People.

MR. JUSTICE GOLDENHERSH delivered the opinion of the court:

Following a bench trial in the circuit court of Cook County, defendant, Willie E. Grant, was found guilty of the offense of unlawful use of weapons (Ill. Rev. Stat. 1971, ch. 38, par. 24—1(a)(4)) and sentenced to 2 years probation, the first 60 days to be served in jail. He appealed directly to this court.

Defendant contends that the complaint charging the offense was fatally defective in that it failed to state that, at the time of the offense, defendant was not "on his own land or in his own abode." The statute in pertinent part provided:

> "(a) A person commits the offense of unlawful use of weapons when he knowingly:
>
> * * *
>
> (4) Carries concealed *** on or about his person except when on his land or in his own abode or fixed place of business any pistol, revolver or other firearm; ***." Ill. Rev. Stat. 1971, ch. 38, par. 24—1(a)(4).

The complaint charges only that the defendant "knowingly carried concealed on his person, a Colt Model 1911 Army .45 Cal. 8 shot automatic pistol, serial No. 413367."

Section 111—5 of the Code of Criminal Procedure (Ill. Rev. Stat. 1971, ch. 38, par. 111—5) provides:

> "An indictment, information or complaint which charges the commission of an offense in accordance with Section 111—3 of this Code [which states the formal requirements for charging a defendant with a criminal violation] shall not be dismissed and may be amended on motion by the State's Attorney or defendant at any time because of formal defects, including:
>
> * * *

(e) The failure to negative any exception, any excuse or proviso contained in the statute defining the offense; ***."

An information "which charges an offense in the language of the statute is deemed sufficient when the words of the statute so far particularize the offense that by their use alone an accused is apprised with reasonable certainty of the precise offense with which he or she is charged." (*People v. Patrick,* 38 Ill.2d 255, at 258.) What is required is notice sufficient to prepare an adequate defense and clarity sufficient to allow pleading a resulting conviction as a bar to future prosecution arising out of the same conduct. (*People v. Harvey,* 53 Ill.2d 585, 588.) The information meets these requirements and the failure to include therein the exception provided in the statute does not render it fatally defective.

Defendant contends that the evidence failed to prove him guilty beyond a reasonable doubt. He argues that the People were required to prove that he carried a pistol, that he carried it knowingly, that he carried it concealed, and that at the time he was not in his own abode. Officer Frank Lameka testified that on the evening of the occurrence he was on duty in an unmarked automobile when, on several occasions, the police radio reported shooting on Sedgwick Street. Shortly thereafter, "a citizen," not otherwise identified, stopped him, pointed out an automobile traveling north on Sedgwick Street and said that its occupants were "the guys shooting all night" and that they had shot at him. The officer asked the "citizen" to join him but was refused, and he then followed the automobile to 1473 North Larrabee Street where he observed five or six men get out of the automobile and enter through the door which led to the second-floor apartment at that address. After radioing for and obtaining assistance, he knocked at the door. Willie Flake, whom the officer knew, having arrested him previously, answered the

door and, when asked if he had any guns, stated "We don't have anything here." There were five men and two women in the apartment. Officer Lameka asked permission to conduct a search, and Flake, stating "that he was the one staying in the apartment," consented. Nothing was found and no arrests were made at that time. Lameka asked Flake what was above the apartment and was told "nothing—a vacant attic." Accompanied by another officer, and possibly Flake, he went into the attic where defendant was found in a shed. A .38-caliber revolver was lying on the floor nearby. Officer Lameka searched the defendant and discovered a .45-caliber Colt automatic tucked under his belt. Defendant was arrested and charged with unlawful use of weapons, and the occupants of the apartment were arrested and charged with disorderly conduct. The disorderly-conduct charges were later dismissed.

Defendant testified that on the date of the arrest he lived at 1473 Larrabee, with his brother, Ray Jackson, and his sister-in-law, the lessees of the apartment, and that he had lived there for about five or six months. When arrested, he explained, he gave his address as 730 West Weed Street because that was his mother's residence and his mailing address. Defendant also gave several other addresses for himself. He explained that he had gone into the attic for the purpose of changing a blown fuse. The trial court found that at the time of the occurrence defendant's address was 730 West Weed Street, concluded that he was in the attic not for the purpose of changing a fuse but to hide from the police, and found him guilty of unlawful use of weapons.

On this record, a finding of guilt or innocence depended upon the credibility attributed by the trial court to the testimony of the police officer and the defendant. Since we are unable to say that the trial court's finding is not supported by the evidence or that the proof is so

unsatisfactory as to create a reasonable doubt of defendant's guilt (*People v. Clay*, 55 Ill.2d 501), the trial court's finding of guilt will not be disturbed.

Defendant contends that because of the failure to allege in the complaint that at the time of the occurrence he was not "in his own abode" his counsel was lulled into the belief that it was unnecessary to adduce testimony from witnesses other than defendant as to the place of his residence or "abode" at the time of the offense. He argues that had counsel been aware that this question would become so important in the trial, he could have brought in additional witnesses to testify as to defendant's residence, including his brother and sister-in-law, the occupants of the apartment. He argues further that the trial court erred in denying his motion to reopen the case and permit him to offer the testimony of witnesses who knew defendant resided in the premises. We do not find the argument persuasive. That defendant was fully aware that the People were required to prove that he was not, at the time, in his own abode is shown by the fact that he testified that he resided there and then explained why, when arrested, he had given another address. In our opinion, defendant was not prejudiced by the omission of the language from the information, and the testimony supports the trial court's finding that he did not live at 1473 Larrabee Street at the time of the offense.

Defendant contends that the search of the apartment and attic violated his fourth amendment right to be free from unreasonable searches and seizures and that the pistol obtained in the search should not have been admitted into evidence. He argues that Willie Flake, who admitted the police officers into the apartment and consented to the search was without authority to do so. He argues further that the testimony shows that the police entered the apartment for the purpose of making an unlawful search and that there was no reason at that time to arrest any of

the occupants of the apartment. The People contend that "the search of the apartment was clearly permissible under a theory of 'hot pursuit' or consent."

We need not and do not decide whether Flake was authorized to admit the officers into the apartment and consent to the search. However categorized, the validity of the warrantless arrest and search must be determined on the basis of whether the People have shown that the "exigencies of the situation made that course imperative." (*McDonald v. United States,* 335 U.S. 451, 456, 93 L. Ed. 153, 158, 69 S. Ct. 191; *Coolidge v. New Hampshire,* 403 U.S. 443, 29 L. Ed. 2d 564, 91 S. Ct. 2022.) In view of the information of which Officer Lameka was possessed and of what he had observed, having gained peaceable entry into the apartment, "the permissible scope of search must, therefore, at the least, be as broad as may reasonably be necessary to prevent the dangers that the suspect at large in the house may resist or escape" (*Warden, Maryland Penitentiary v. Hayden,* 387 U.S. 294, 299, 18 L. Ed. 2d 782, 87 S. Ct. 1642, 1646), and the reasonable scope of the search included the attic. At the time that he saw the .38-caliber revolver lying on the floor near the defendant, Officer Lameka's presence in the attic was within the reasonably permissible scope of the search he was conducting and the testimony of what he saw at that time was admissible into evidence. (*People v. Abrams,* 48 Ill.2d 446.) Under these circumstances, the search of defendant's person was clearly reasonable, and revealed the presence of the other revolver concealed upon his person.

Finally, citing *People v. Harvey,* 53 Ill.2d 585, defendant contends that because his case was pending on direct appeal on January 1, 1973, the effective date of the Unified Code of Corrections, the portion of the trial court's order which directs that the first 60 days of his probation be served in jail must be vacated and set aside. As effective on January 1, 1973, the Unified Code of Corrections in pertinent part provided:

"The court shall not require as a condition of the sentence of probation or conditional discharge that the offender be committed to a period of imprisonment except under Article 7 [Sentence of Periodic Imprisonment]." Ill. Rev. Stat., 1972 Supp., ch. 38, par. 1005—6—3(d).

The People concede that if the provisions of section 5—6—3 of the Unified Code, effective January 1, 1973, govern, that the portion of the probation order of which defendant complains must be vacated but contend that the provision of the Unified Code which they argue became effective November 17, 1973, controls and that the sentence should stand.

In *People ex rel. Weaver v. Longo,* 57 Ill.2d 67, after considering contentions similar to those made in this case, we held that the petitioner's parole eligibility was determined by the provisions of section 3—3—3 of the Unified Code effective January 1, 1973, and could not be affected by the subsequent amendment of its provisions. That holding is controlling here and defendant is entitled to the benefit of the provisions effective January 1, 1973. The inclusion in the probation order of the provision that the first 60 days be served in the county jail must, therefore, be stricken.

For the reasons stated that portion of the sentence which provides that the first 60 days of probation be served in the county jail is vacated, and, as so modified, the judgment of the circuit court of Cook County is affirmed.

*Judgment modified and affirmed.*